IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| N- N- | : |
| | : |
| *Plaintiff,* | : |
| | : |
| v. | : CIVIL NO. 25-5494 |
| | : |
| BRIAN MCSHANE et al. | : |
| | : |
| *Defendants* | : |

**Scott, J.**                                                                                                                         **November 6, 2025**

**<u>MEMORANDUM</u>**

Noncitizen detainee N- N-, a citizen and national of Nigeria, filed a petition for writ of habeas corpus under 28 U.S.C. Section 2241 against the Acting Field Office Director of the Philadelphia Field Office of U.S. Immigration and Customs Enforcement ("ICE"), Secretary of the U.S. Homeland Security, U.S. Attorney General, and Acting Director of ICE, alleging that ICE did not have authority under the Immigration and Nationality Act ("INA") to impose added conditions to an immigration judge's order releasing N- N-. N- N-'s petition cites the Fifth Amendment of the U.S. Constitution, the Administrative Procedure Act ("APA"), and U.S. Supreme Court precedents as grounds for granting the petition. For the reasons below, N- N-'s petition is granted. The Government must remove electronic surveillance, supervision requirements, and any other condition that goes beyond the immigration judge's order.

**I.   FACTUAL BACKGROUND**

N- N- is a 33-year-old citizen and national of Nigeria. ECF No. 1 ¶ 24 [hereinafter Pet.]. He lives with his wife, a U.S. citizen, and their children in the Philadelphia area. *Id.* He was born in January 1992 in Lagos, Nigeria. *Id.* ¶ 41. In 2020, N- N- fled Nigeria for Ghana, recounting that he was enslaved, beaten, and tortured in Nigeria because of his political opinions, race, and

association with certain social groups. *Id.* While in Ghana, he met his wife who is a U.S. citizen of Ghanaian descent. *Id.* ¶ 42. Before their marriage, N-N-'s wife filed an I-129F, Petition for Alien Fiancé to bring N- N- to the United States. *Id.* ¶ 44. The petition was approved and N- N- was issued a K-1 visa. *Id.* He entered the United States on December 3, 2024 and later married his wife. *Id.*

On April 16, 2025, N- N- was arrested and charged with misdemeanor simple assault and summary harassment. 18 Pa. Cons. Stat. §§ 2701(a)(1), 2709(a)(1). Pet. ¶ 46. The charges against N- N- have since been dismissed. ECF No. 15 at 33-34 [hereinafter Hearing Transcript]. About a month later while N- N- was out on bail, ICE officers arrested N- N- and transported him to Moshannon Valley Processing Center, where he was detained. *Id.* ICE issued a Notice of Custody Determination on May 31, 2025 to continue N- N-'s detention. *Id.* ¶ 47. After retaining counsel, N- N- filed requests for status adjustment, asylum, withholding of removal, relief under the Convention Against Torture treaty, and a custody redetermination hearing under 8 C.F.R. Section 1003.19(a). *Id.* ¶¶ 50-51. On August 5, 2025, an immigration judge held a custody redetermination hearing and found N- N- was not a danger to the community or a flight risk. Id. ¶ 53. Thus, he granted N- N-'s release on bond of $3,000. *Id.* ¶ 53.

Upon N- N-'s release, the Department of Homeland Security ("DHS") instructed him to attend an appointment with ICE. ICE subsequently required N- N- to wear an ankle monitor for at least three months as part of the Intensive Supervision Appearance Program ("ISAP"). Pet. ¶¶ 55-58. ICE communicated that it may instead supervise N- N- in the form of weekly or monthly biometric check-ins via his phone if he complies with his release conditions for three months. *Id.* ¶¶ 58, 64. As part of ISAP, N- N- must do the following: (i) wear the ankle monitor 24/7; (ii) charge it for two to three hours daily with a battery that prohibits N- N-'s ability to walk; (iii)

prevent water from coming into contact with the ankle monitor; (iv) avoid running on treadmills, (v) attend in-person office and home visits; and (vi) secure advance permission before working or traveling outside Pennsylvania, New Jersey, or Delaware.  *Id*. ¶¶ 61-63; Hearing Transcript at 24-25.

N- N- subsequently filed this petition for writ of habeas corpus, seeking release from ICE's conditions not imposed in the immigration judge's order.

## II.  DISCUSSION

N- N- argues that ICE may not impose supplementary conditions on his release ordered by an immigration judge.  This Court agrees that ICE's imposition of added conditions on N- N-'s release violates Due Process and the *Accardi* doctrine.

"Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions."  28 U.S.C. § 2241(a). "The writ of habeas corpus shall not extend to a prisoner unless . . . [h]e is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c).  28 U.S.C. Section 2241 provides authority for federal courts to rule on habeas corpus petitions by noncitizens challenging the legality or constitutionality of their detention by ICE.  *Demore v. Kim*, 538 U.S. 510 (2003); *Hope v. Warden York Cnty. Prison*, 972 F.3d 310 (3d Cir. 2020).

In this case, N- N- posits many grounds to challenge his ankle monitor.[1]  He asserts that his ankle monitor violates his Fifth Amendment Due Process rights, the APA, and U.S. Supreme Court precedents.  This Court grants N- N-'s petition because ICE failed to follow its own rules under *Accardi*, thereby violating N- N-'s Due Process rights.

---

[1] The Government does not contest that N- N-'s ankle monitor qualifies as being "in custody" for purposes of a Section 2241 habeas petition.  ECF No. 8 at 8 [hereinafter Gov't Resp.].

### a. ICE's Statutory and Regulatory Powers Under the INA.

Under the INA, ICE may release a detainee on "bond of at least $1,500 with security approved by, and containing conditions prescribed by, [ICE]; or conditional parole . . . ." 8 U.S.C. § 1226(a). Certainly, ICE has the statutory authority to place conditions on the release of noncitizen detainees. The crux of this case lies in the regulations.

"The relevant implementing regulations state that a detainee under § 1226(a) may be released on bond by ICE or by an immigration judge (IJ) if the detainee demonstrates that such release would not pose a danger to property or persons, and that he is likely to appear for any future proceeding. If denied release at the initial bond hearing, a § 1226(a) detainee may request a custody redetermination hearing before an IJ." *Borbot v. Warden Hudson Cnty. Corr. Facility*, 906 F.3d 274, 275 (3d Cir. 2018) (cleaned up); 8 C.F.R. §§ 236.1(c)(8), 1236.1(c)(8)[2]; 8 C.F.R. 1003.19(a); 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1) (identical text; separate codifications for DHS and DOJ). The initial bond determination and bond redetermination may both be appealed to the Board of Immigration Appeals ("BIA"). 8 C.F.R. § 1236.1(d)(3).

This regulatory framework is sequential and must be read altogether to avoid surplusage. 8 C.F.R. Sections 236.1(c)(8) and 1236.1(c)(8) give ICE authority to set conditional parole initially. This regulatory power is derived from 8 U.S.C. Section 1226(a)(2). But if ICE denies a detainee conditional parole, the detainee may request an immigration judge's review. *Johnson v. Guzman Chavez*, 594 U.S. 523, 527-28 (2021) (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)). 8 C.F.R. Section 1236.1(d)(1) specifically states that "the immigration judge is authorized to

---

[2] Following the transfer of immigration enforcement authority from the Department of Justice ("DOJ") to DHS under the Homeland Security Act of 2002, identical regulatory provisions were recodified in separate chapters of Title 8 of the Code of Federal Regulations—Part 236 for DHS and Part 1236 for the Executive Office for Immigration Review. *See* Homeland Security Act of 2002, Pub. L. No. 107-296, §§ 441-442, 116 Stat. 2135, 2192-93 (2002); 68 Fed. Reg. 9824, 9825-27 (Feb. 28, 2003).

exercise the authority in section 236 of the Act," which in turn gives ICE the ability to release a detainee on bond and with conditions. *See* 8 U.S.C. § 1226(a)(2). If either party is dissatisfied with the immigration judge's custody determination, there are two methods of recourse: (a) appeal the immigration judge's order to the BIA or (b) after an initial bond redetermination, a detainee may request a subsequent bond redetermination upon a showing that their "circumstances have changed materially since the prior bond redetermination." 8 C.F.R. §§ 1236.1(d)(3), 1003.19(a), 1003.19(e). Accordingly, based on ICE's own regulations, an immigration judge and the BIA may determine custody conditions. Permitting ICE to impose additional conditions *after* an immigration judge has ordered release and set conditions renders the administrative adjudicatory process null.

ICE would like this Court to read the regulations as nonsequential and existing independently of each other. ICE contends that the power to "impose release conditions rests solely with ICE," and an immigration judge's power pursuant to 8 C.F.R. Section 1236.1(d) pertains only to review of ICE's release conditions. Gov't Resp. at 5. This interpretation relies on the text: an immigration judge may "detain the alien in custody, release the alien, and determine the amount of bond, if any, under which the respondent may be released." 8 C.F.R. § 1236.1(d); *Id*. at 5, 7. Thereafter, ICE asserts, the process permits a noncitizen to "appeal" ICE's release conditions (that it imposes *after* an immigration judge's release order) via "an application for amelioration of the terms of release" within seven days, or otherwise request review by the district director. 8 C.F.R. §§ 1236.1(d)(1), 1236.1(d)(2). Thus, ICE views N- N-'s ankle monitor as "supplementary to the [immigration judge's] order" and not circumventing it. Hearing Transcript at 41.

However, an application for amelioration *is* an appeal of ICE's initial custody

determination, contrary to its argument. *See* 8 C.F.R. § 1236.1(d)(1) ("After an initial custody determination by the district director . . . the respondent may . . . request amelioration of the conditions under which he or she may be released."). The requirement that a *released* alien file an application for amelioration within seven days does not create, as ICE argues, a second pseudo appeal right to ICE's additional conditions placed *after* an immigration judge has already entered an order under Section 1236.1(d)(1). A complete textual analysis of the regulations requires that they be read together, giving meaning to each section so as to avoid absurd outcomes, redundancy, and futility of certain provisions. If ICE's interpretation of the process were correct—that ICE may initially determine release conditions under 8 C.F.R. Section 1236.1(c)(8), N- N- may appeal those conditions to an immigration judge under 8 C.F.R. Section 1236.1(d)(1), yet ICE can thereafter impose additional release conditions notwithstanding the immigration judge's order, all while never having advocated for such conditions before the immigration judge or appealed to the BIA under Section 1236.1(d)(3)—then the administrative adjudicatory process would be rendered meaningless and superfluous. This interconnected regulatory scheme mirrors many other administrative appeal procedures, and the Court will not embrace ICE's isolated reading of specific sentences it finds convenient.

Aside from its textual argument, ICE cites two BIA matters to support its interpretation. The Court does not find them persuasive in the slightest. In the *Matter of Aguilar-Aquino*, the BIA determined that an immigration judge did not have jurisdiction to redetermine custody status of a noncitizen's ankle monitor because an ankle monitor did not qualify as "custody" within the meaning of 8 C.F.R. Section 1236.1(d)(1), and the noncitizen had failed to file an application for amelioration of the terms of release within the time allowed. 24 I&N Dec. 747, 753 (BIA 2009). The BIA stated that "we need not reach the DHS's alternative argument regarding the Immigration

6

Judge's authority to set conditions beyond the establishment of a monetary bond." *Id*. at 753. Moreover, the BIA's opinion in the *Matter of Garcia-Garcia* cuts against the very principle ICE argues here. 25 I&N Dec. 93, 95 (BIA 2009) ("We agree with the Immigration Judge's determination that she had jurisdiction to review and modify the condition placed on the respondent's release from DHS custody.").

Therefore, the regulations do not permit ICE to impose additional release conditions without utilizing the administrative appeal process.

### b. ICE's Failure to Adhere to Binding Regulations Violates the *Accardi* Doctrine and Due Process.

Because ICE has failed to follow its binding regulations, the Court finds that (i) ICE violated the *Accardi* doctrine and (ii) N- N-'s ankle monitor is a violation of Due Process.

Habeas review is available "where the deprivation of rights is such that it necessarily impacts the fact or length of detention." *Leamer v. Fauver*, 288 F.3d 532, 540 (3d Cir. 2002). When presented with a habeas petition, courts may invalidate an agency action in violation of the *Accardi* doctrine. *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954); *see also Chong v. Dist. Dir., I.N.S.*, 264 F.3d 378, 389-90 (3d Cir. 2001) (finding that the agency failed to follow its regulations, but petitioner failed to demonstrate prejudice).

Under the *Accardi* doctrine, federal agencies must follow their own binding regulations and formally established procedures, even if those procedures provide greater rights than required by statute. *Accardi*, 347 U.S. at 260; *Service v. Dulles*, 354 U.S. 363, 388 (1957); *Vitarelli v. Seaton*, 359 U.S. 535, 539-40 (1959). Once an agency chooses to promulgate such rules, it must adhere to them to ensure a fair administrative process. The *Accardi* doctrine is limited, however, and may require a showing of prejudice when an agency's failure to follow its regulations does

7

not implicate "important procedural benefits" impacting individual rights and liberties. *Am. Farm Lines v. Black Ball Freight Serv.*, 397 U.S. 532, 538-39 (1970); *Leslie v. Att'y Gen. of U.S.*, 611 F.3d 171, 178-79 (3d Cir. 2010) ("[W]hen an agency promulgates a regulation protecting fundamental statutory or constitutional rights of parties appearing before it, the agency must comply with that regulation.").

As explained above, ICE has failed to follow its own administrative adjudicatory process. The immigration judge released N- N- on bond for $3,000.00, with no conditions. Pet. ¶ 2. ICE presented argument and evidence to the immigration judge at the redetermination hearing. Hearing Transcript at 13. At no point during ICE's presentation did it assert that N- N-'s release, if appropriate, should have supervisory conditions, such as an ankle monitor. *Id*. at 14. Rather, ICE argued at the redetermination hearing that N- N- should be detained outright in a facility. *Id*. at 15. After the immigration judge released N- N- on bond for $3,000.00, ICE did not appeal that decision as permitted by rule. In fact, ICE affirmatively waived its right to appeal. *Id*. at 15-16; ECF No. 1-10.

ICE's failure to follow its own rules bears heavily on N- N-'s procedural rights and individual liberties. He need not make an affirmative showing of prejudice under *Accardi*, but nonetheless, he has sufficiently done so. *See* Pet. ¶¶ 61-63; Hearing Transcript at 24-25; *see Leslie v. Att'y Gen.*, 611 F.3d at 179 ("[D]ispensing with the prejudice requirement for violations of regulations that protect fundamental constitutional or statutory rights . . . ."). Moreover, N- N-'s ankle monitor, removable solely at the discretion of ICE, violates Due Process. *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) ("[P]ermitting indefinite detention of an alien would raise a serious constitutional problem."). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects."

*Id.* Consequently, N- N-'s petition is granted, and ICE's release conditions not found in the immigration judge's order are invalidated. *See Orellana Juarez v. Moniz*, 788 F. Supp. 3d 61, 69 (D. Mass. 2025) (ruling ICE's release conditions, including ankle monitoring, not present in the immigration judge's order violated Due Process and the *Accardi* doctrine).

### III.   CONCLUSION

For the foregoing reasons, N- N-'s habeas petition is granted. An appropriate Order follows.

BY THE COURT:

*s/Kai N. Scott*

**THE HONORABLE KAI N. SCOTT**
**United States District Court**