IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

N- N-                                        :
                    *Petitioner,*            :
                                             :
        v.                                   :    **CIVIL NO. 25-5494**
                                             :
**BRIAN MCSHANE, et al.**                    :
                    *Respondents.*           :
                                             :

MEMORANDUM

**Scott, J.**                                                      **April 20, 2026**

Pending before the Court is Petitioner N- N-'s ("Petitioner") Motion for Attorney

Fees ("Motion") pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d). (ECF

No. 20.)  Respondents oppose Petitioner's Motion. (ECF No. 23.)  For the following reasons, the

Court **GRANTS** Petitioner's Motion.

## I.      Background

Petitioner initiated the underlying action upon filing a Petition for Writ of Habeas Corpus

("Petition"). (ECF No. 1.)  Petitioner is a citizen of Nigeria who entered the United States on

December 3, 2024, on a K-1 visa while seeking asylum from persecution in his home country.

(ECF No. 20 at 2, 7; ECF No. 23 at 2.)  Petitioner's visa authorized him to stay in the country until

March 2, 2025. (ECF No. 23 at 2.)  Petitioner was arrested on April 16, 2025, by Upper Darby

Police and charged with simple assault and harassment. *Id.*

In May 2025, Petitioner was arrested and detained by U.S. Immigration and Customs

Enforcement ("ICE") at the Moshannon Valley Processing Center, served with a Notice to Appear,

and subject to removal proceedings. (ECF No. 20 at 2; ECF No. 23 at 2-3.)  On August 5, 2025,

Petitioner was ordered released on bond and without further conditions by an immigration judge

1

who determined that Petitioner was neither a safety nor flight risk. *Id.* ICE did not appeal the immigration judge's determination. *Id.* Upon his release, the Government placed Petitioner under ICE's Intensive Supervision Appearance Program and ordered him to wear an ankle monitor. (ECF No. 23 at 3.) Petitioner filed a Petition for a Writ of Habeas Corpus on September 24, 2025 (ECF No. 1) arguing that ICE did not have the authority to impose conditions not ordered by the immigration judge and that such additional conditions violated his Due Process rights and the *Accardi* doctrine. (ECF No. 20 at 3; *see also* ECF No. 1.)

This Court held oral argument on the Petition on October 9, 2025. Following the hearing, this Court agreed that ICE lacked a valid basis for imposing the additional conditions, granting the Petition and ordering the Government to remove all conditions of release inconsistent with the immigration judge's order immediately. (ECF No. 18.) Upon this Court's finding that Petitioner prevailed in the underlying action, he submitted to the Court the instant Motion for Attorneys' Fees, which the Parties have now fully briefed. (ECF Nos. 20, 23, 25.)

## II.    Legal Standard

The EAJA states, in relevant part:

> a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A).

The Third Circuit has held that a petition for a writ of habeas corpus is a civil action for purposes of the EAJA. *Michelin v. Warden Moshannon Valley Corr. Ctr.*, Nos. 24-2990 and 24-3198, 2026 U.S. App. LEXIS 3264 (3d. Cir. 2026). For a civil action to be eligible for a fee award, (1) the claimant must be a prevailing party, (2) the Government's position must not have been

2

substantially justified, (3) there must be no special circumstances that make awarding fees unjust, and (4) the fee application must be submitted to the court within 30 days of final judgment along with an itemized statement. *Comm'r v. Jean*, 496 U.S. 154, 158 (1990). The statute expressly limits recoverable fees and expenses only to those which are reasonable, 28 U.S.C. § 2412(d)(2)(A), and trial courts maintain broad discretion in determining whether to award fees. *Cruz v. Comm'r of Soc. Sec.*, 630 F.3d 321, 325-26 (3d Cir. 2010).

Moreover, "the clearly stated objective of the EAJA is to eliminate financial disincentives for those who would defend against unjustified governmental action and thereby to deter the unreasonable exercise of Government authority" by making it possible for claimants to recoup litigation costs. *Ardestani v. INS*, 502 U.S. 129, 138 (1997). The EAJA is therefore a limited waiver of sovereign immunity that "must be strictly construed in favor of the United States." *Id.* at 137. But where there is no ambiguity "*after* exhausting the traditional tools of statutory interpretation, [. . . ] there is no need for us to resort to the sovereign immunity canon." *Michelin*, 2026 U.S. App. LEXIS 3264, at \*9.[1]

## III. The Government's Position Was Not Substantially Justified and Petitioner is Entitled to an Award of Fees.

Because the Parties do not dispute that Petitioner is a prevailing party, that no special circumstances exist, and that the application was timely, the only issues before the Court are whether the Government's position was substantially justified and thus whether, should the Court find that recovery is warranted, the fees sought are reasonable. The Court addresses each in turn.

---

[1] The Government briefly mentions that the EAJA is a limited waiver of sovereign immunity that must be strictly construed in its favor. (ECF No. 23 at 3). It does not further explain the relevance of this argument, but the Court construes it to mean that the Government believes the Court should find that the Government has not waived sovereign immunity in this instance and thus Petitioner is not entitled to a fee award under the EAJA. The Court rejects this contention both because it was not adequately briefed by the Government and because the statute is clear that the EAJA applies. Thus, the Court has no reason to turn to the sovereign immunity canon.

The Third Circuit has instructed that, "in immigration cases, the Government must meet the substantially justified test twice: once for its underlying conduct and once for its decisions in the ensuing litigation about that conduct. We do not assume the position of the Government was not substantially justified simply because it lost." *Michelin v. Warden Moshannon Valley Corr. Ctr.*, 2026 U.S. App. LEXIS 3264, at \*29 (cleaned up). The Government therefore bears the burden of proving its position was justified at those two levels. *Id.,* at \*28 (citing *Hanover Potato Prods., Inc. v. Shalala*, 989 F.2d 123, 128 (3d Cir. 1993)). To do so, and thus to defeat a claimant's petition for a fee award under the EAJA, the Government must demonstrate "(1) a reasonable basis in truth for the facts alleged; (2) a reasonable basis in law for the theory it propounded; and (3) a reasonable connection between the facts alleged and the legal theory advanced." *Id.* at 29 (citing *Cruz*, 630 F.3d at 324).

In his Motion, Petitioner argues that the Government's position was not substantially justified at either the pre-litigation phase or during litigation. (ECF No. 20 at 6.) He contends that ICE's pre-litigation conduct lacked "a basis in fact for imposing surveilling on N.N." because there was no "record evidence [] to justify their action." *Id.* In fact, Petitioner contends that the circumstances—the immigration judge's order holding that the only condition necessary for Petitioner's release was bond—dictate that no grounds exist for permitting ICE's decision to place Petitioner under supervision, including by requiring him to wear an ankle monitor. *Id.* Petitioner goes on to cite this Court's earlier holding in this case in which the Court disagreed with ICE's decision to place Petitioner under supervision as further evidence of the unjustified nature of ICE's pre-litigation conduct. *Id.* Moreover, Petitioner points to *Michelin* as evidence that, for ICE's conduct to be substantially justified here, it must have shown that Petitioner's "individual characteristics merited supervision conditions beyond those ordered by an immigration judge."

4

(ECF No. 25 at 2.) Petitioner argues that the Government's litigation position was unreasonable because this Court rejected it previously and another district court in a different circuit rejected a similar argument. ECF No. 20 at 7.

As an initial matter, the controlling caselaw states that the Government losing an argument on the merits—as it did here—does not inherently mean its position was not substantially justified under the EAJA. *See Michelin*, 2026 U.S. App. LEXIS 3264, at *29. Thus, Petitioner's argument that the Government's position was not substantially justified because this Court previously found unpersuasive ICE's determination to place Petitioner under supervision is unavailing on its face. Despite that, Petitioner does not bear the burden here; it is the Government's responsibility to prove to this Court that its conduct was substantially justified. The Government has failed to do so.

The Government must demonstrate reasonable bases in fact, in law, and a reasonable connection between the two to succeed here. In its Response, the Government offered no factual basis for this Court to believe that it was reasonable for it to monitor Petitioner. In addition, the Government's argument that it has a reasonable basis in law for doing so strains credulity. It argues that its "underlying conduct was substantially justified, because it is unsettled whether an immigration court may impose conditions upon release beyond the amount of bond." (ECF No. 23 at 5.) Although this may be true, the Government makes no arguments to address the fact that the Department of Homeland Security's own regulations nullify its position. The Government contends here, without adequate explanation, that because of "the distinction between authority over release and monitoring, it was reasonable for ICE to understand the regulations and statute to give ICE the authority to impose conditions when a person without lawful status is released from custody at every stage of that person's immigration proceedings." (ECF No. 23 at 5-6 (citing 8

U.S.C. § 1226 (INA § 236(a)) and 8 C.F.R. § 1236(c)).)

As this Court has observed previously, this argument has no legitimate basis in a textual analysis of the agency's regulations. But, although the Government did lose on the merits in the underlying litigation, that is not what renders its argument unsuccessful here. It is fatal, however, that the Government makes the same argument a second time without remedying the unreasonableness that led this Court to reject it the first time.[2] As the Court previously observed—and which the Government did not address further here:

> If ICE's interpretation of the process were correct—that ICE may initially determine release conditions under 8 C.F.R. Section 1236.1(c)(8), N- N- may appeal those conditions to an immigration judge under 8 C.F.R. Section 1236.1(d)(1), yet ICE can thereafter impose additional release conditions notwithstanding the immigration judge's order, all while never having advocated for such conditions before the immigration judge or appealed to the BIA under Section 1236.1(d)(3)—then the administrative adjudicatory process would be rendered meaningless and superfluous. This interconnected regulatory scheme mirrors many other administrative appeal procedures, and the Court will not embrace ICE's isolated reading of specific sentences it finds convenient.

(ECF No. 17 at 6.)

Therefore, this Court finds that the Government has not identified a reasonable basis in fact, law, or reasonable connection between the two in its pre-litigation position to conclude that its position was substantially justified. Because the Government failed to meet its burden at the first level of the inquiry—pertaining to its pre-litigation conduct—the Court need not assess whether its litigation conduct was substantially justified because its failure at the first step is dispositive. Accordingly, because the Government failed to meet its burden, Petitioner is entitled to an award of fees under the EAJA.

---

[2] To be certain, it has no substantive bearing on the Court's analysis here that the Government was unsuccessful in advancing this argument the first time. The Court considered this argument a second time on its own merits. The issue remains, however, that the Government failed to explain why the Court should agree with its position this time. Thus, the Court refers to its previous ruling rejecting the Government's position on the merits in the first instance solely to highlight the fact that the Government did not remedy the shortcomings of its argument; indeed, it made no effort to do so this time around.

## IV.    Petitioner's Fee Request is Excessive and The Court Reduces It Accordingly.

Although the Court agrees with Petitioner that the Government's position was not substantiality justified, the Court agrees with the Government that Petitioner has requested an award for fees beyond what is reasonable.  As Petitioner notes, the Government does not dispute the reasonableness of the hourly rate for Petitioner's counsel nor the accuracy of counsels' records.  (ECF No. 25 at 4.)  Thus, the Court does not weigh in on either of those aspects of the Petition.  The Court does, however, address the specific objections raised by the Government.

"In statutory fee cases [such as this one], it is well settled in this circuit that in calculating the "lodestar," or initial fee calculation requiring the court to multiply a reasonable hourly fee by the reasonable amount of hours worked, the district court may not award less in fees than requested unless the opposing party makes specific objections to the fee request." *United States v. Eleven Vehicles, Their Equip. & Accessories*, 200 F.3d 203, 211 (3d Cir. 2000).  But "once the opposing party has made a sufficiently specific objection to the substance of a fee request, 'the court has a great deal of discretion to adjust the fee award in light of these objections.'" *Id.* at 212.  District courts should take care to avoid *sua sponte* reductions in fee awards because the movant has a right to offer evidence in support of its petition and it is otherwise inappropriate for courts to take this step in statutory fee cases which are inherently adversarial.  *Id.*  But if a district court finds "that categories of work for which the [] request[ed] fees are not compensable under the EAJA, it should prune the fees requested for this work from its fee award." *Id.* at 212-13.

In *Eleven Vehicles*, the Third Circuit expressly took issue with "the government's bare allegation 'in general terms that the time spent was excessive'" and forbade district courts from relying on such an inadequate objection to "conduct a generalized proportionality review of the entire fee award" for fear that permitting such would allow the very *sua sponte* reductions that are

7

precluded in those cases. 200 F.3d at 218. Given this, the Court finds the Government's objections to be sufficiently specific. In particular, the Government takes issue with Petitioner's request for fees "for eight attorneys to generate: 1) a petition, 2) an unopposed pseudonym motion, 3) oral argument, and 4) the petition for fees currently before the Court. Petitioner's claim includes fees for time spent conducting a moot court exercise involving five attorneys and the cost for a third attorney to travel from New York City to observe the hearing from counsel's table without participating." (ECF No. 23 at 7.) The Government goes on to explain its objections to those specific requests, far from the "bare allegation[s]" the Third Circuit forbade in *Eleven Vehicles.*

"[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley*, 461 U.S. 424, 437 (1983). The district court, in its discretion, may reduce an award by excluding hours that were not "reasonably expended." *Id.* at 437 (1983) ("We reemphasize that the district court has discretion in determining the amount of a fee award. This is appropriate in view of the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters."); *see also Comm'r INS v. Jean*, 496 U.S. at 161 ("once a private litigant has met the multiple conditions for eligibility for EAJA fees, the district court's task of determining what fee is reasonable is essentially the same as that described in Hensley.").

In total, Petitioner seeks $40,908.89 for fees and expenses, including the costs of counsel drafting a Reply brief. In support of his petition, Petitioner submitted to the Court seven declarations and accompanying time tracking sheets for the various counsel who worked on his case. (*See* ECF No. 20-1.) The Court agrees with the Government that not all hours were reasonably expended. Specifically, the Court will reduce the fees pertaining to the oral argument in accordance with the specific objections raised by the Government, to permit fees for only the

8

arguing attorney, Mikaela Wolf-Sorokin, and her supervisor, Lilah Thompson. The rate for October 2025, when the argument took place, was $279.88 per hour. The other attorneys in question, Jonah Eaton and Sarah T. Gilman, detailed an hour and 32 minutes and four hours, respectively, for their attendance at oral argument. Accordingly, the fee will be reduced by the October rate multiplied by the total hours tracked for the oral argument by Mr. Eaton and Ms. Gilman: $1,488.96.

The Court will not reduce the fee award based on time spent drafting the underlying habeas corpus petition, the motion for attorneys' fees, or the pseudonym motion. Regarding the habeas petition, the Government cannot have it both ways. It cannot rely on the novelty of the legal issue at hand to argue that its position was substantially justified while disregarding the fact that such novelty requires the "work of a team of attorneys who brought a first-in-circuit challenge[.]" (ECF No. 25 at 4.) Similarly, the Court will not reduce the fee award further based on the time spent preparing for oral argument due to the novel nature of the case, the complexity of the legal issues, and the fact that it was Ms. Wolf-Sorokin's first federal appearance as a young attorney. The Court is not, at this juncture, prepared to instruct the attorneys in this case (or provide guidance to judges and attorneys in other cases) on the appropriate amount of time for such preparation because there are several variables at play. Furthermore, the Court will not heed the Government's objection pertaining to the pseudonym motion because, by the Court's count, counsel spent only one hour and 21 minutes on the motion and had no knowledge beforehand that the motion would be unopposed. (*See* ECF Nos. 20-1 at 9, 26.)

## V.    CONCLUSION

The Court hereby **GRANTS** Petitioner's Motion for Attorney Fees under the EAJA in the amount of $39,419.93.

9

BY THE COURT:

_____

HON. KAI N. SCOTT
United States District Court Judge